OPINION
¶ 1 The defendant-appellant, Thomas M. Veith, appeals the April 8, 2004 judgment and sentence of the Marion County Court of Common Pleas finding him guilty of one count of assault in violation of R.C. 2903.13(A); one count of operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1); one count of operating a vehicle with a prohibited concentration of alcohol in his system in violation of R.C.4511.19(A)(3); and one count of no operator's license in violation of R.C. 4507.02.
¶ 2 On December 29, 2002, Lieutenant Mathew Bayles stopped a van traveling left of center and eighteen miles an hour over the speed limit in Marion County, Ohio. The driver, Thomas M. Veith, produced an expired driver's license. After questioning Veith about his expired license, Lt. Bayles detected the smell of alcohol and noticed that Veith had slurred speech and glassy and blood shot eyes. When Lt. Bayles asked Veith if he had been drinking, Veith replied that he had three beers.
¶ 3 Lt. Bayles stopped Veith on an incline, and the inclement weather conditions made it difficult for Lt. Bayles to perform any field sobriety tests that involved mobility. Therefore, Lt. Bayles administered the horizontal gaze nystagmus eye test, which indicated that Veith was under the influence of alcohol. Veith was transported to the police station for further sobriety tests and breathalyzer testing.
¶ 4 At the police station, Veith failed the additional field sobriety tests that were administered. Consequently, Veith was read his Miranda
rights and the appropriate bureau of motor vehicle forms that advised him of the consequences of taking and not taking the breathalyzer test. As Lt. Bayles was entering the necessary data into the breathalyzer, he noticed that Veith had his hand by his mouth and two quarters in his hand. Lt. Bayles asked Veith if he had coins in his mouth, and Veith denied. Immediately thereafter, Veith asked Lt. Bayles if he could use the restroom, and Lt. Bayles granted that request.
¶ 5 On their way to the restroom, Lt. Bayles noticed Veith's hand move towards his mouth again. When Veith was finished using the restroom, Lt. Bayles used a flashlight to look into Veith's mouth. Lt. Bayles searched Veith's mouth for foreign objects but could not find anything. Then, Lt. Bayles heard clicking noise coming from Veith's mouth. Lt. Bayles attempted to check Veith's mouth again, but, according to Lt. Bayles, it looked like Veith swallowed the object. Veith again denied having anything in his mouth or swallowing anything. Nevertheless, Lt. Bayles waited an additional twenty to twenty-five minutes before administering Veith the breathalyzer test in the event that Veith had a foreign object in his mouth or ingested something. Veith tested .141 BAC, which was almost one and half times the legal limit.[1]
 ¶ 6 Veith objected to the breathalyzer results and demanded an additional breathalyzer test, but that request was denied. Moreover, as Lt. Bayles was filling out paperwork, Veith objected to Lt. Bayles' carrying his service weapon in the breathalyzer room. At this point, the testimony of Lt. Bayles, Lt. Radcliff and Patrolman Ice differs from Veith's testimony. Lt. Bayles testified that he turned his back to sign something, and, as he turned back around, Veith's shoulder was in his stomach. Lt. Bayles stated:
I turned for a moment to sign a paper, and just as I'm turning backlike this, Mr. Veith rushed at me. He — he was, as I'm doing this, he wasprobably about even where the table leg is right there in front of me.(Pointing) * * *
Like I explained I just — I turned to sign something, as I turnedback, I got about right to here when I felt his shoulder go into mystomach. It knocked me up and back. I felt my gun being tugged likethis. (Indicating) I looked down. I saw both his hands on my gun from thefront. I immediately put my hands down to keep my gun in the holsterbecause I was — I was the split second thinking at that point (sic) was Iknow to get my gun out that you got to push down, up, and out. And himbeing in front of me, all he had to do was push down and then pull itback towards himself and up. He might get it out.
 And I knew that Lieutenant Radcliff and Patrolman Ice was in thelieutenant's office. I got — he's got my gun (sic). At that point I'mtrying to keep my hands on the gun. He drives me back this direction. Iam trying to get towards the other officers as he's doing this, andthere's a door right here that leads into the evidence area as, like Iexplained before, he drove me halfway through that door.
Trial Tr. at pp. 59-60.
¶ 7 At that point, Lt. Bayles yelled indicating that Veith had his weapon. In response, Lt. Radcliff and Patrolman Ice entered the room and saw Veith "pinning" Lt. Bayles. Both police officers testified that they saw Veith's hands on Lt. Bayles' gun. In order to restrain Veith and get his hands removed from Lt. Bayles' gun, both Lt. Radcliff and Patrolman Ice struck Veith in the face so that Veith would remove his hands from the weapon in order to protect himself. The police officers' tactics worked, and Veith was handcuffed. It should be noted that neither Lt. Radcliff nor Patrolman Ice saw the initial contact between Veith and Lt. Bayles. Nevertheless, both police officers testified that Veith did not punch, bite, or swing at Lt. Bayles during the part of the alteration they witnessed.
¶ 8 On the other hand, Veith testified that he was nervous with the entire situation leading up to the altercation. At trial, Veith testified that he informed Lt. Bayles that he had no strap to keep his gun secure in its holster.[2] At that point, Veith stated that Lt. Bayles indicated that Veith should worry about himself. According to Veith, Veith made a quick move in an attempt to fall to the floor in order to "block himself" from the situation. Because the breathalyzer room was approximately four feet by six feet, Veith testified that as he fell to the ground, he accidentally fell into Lt. Bayles. Moreover, Veith stated that he was not sure what he was grabbing as he fell. Veith recognized that it may have been the table or Lt. Bayles' belt. Additionally, Veith stated that he had his "lucky coin" in his mouth during the incident.
¶ 9 As a result of the altercation between the police officers and Veith, Veith was transported to the hospital. On his way to the hospital, Veith testified that he noticed his "lucky coin" adhering to his sweatshirt by his dry blood. Thus, Veith took his "lucky coin" and placed it in his sock.
¶ 10 Veith was convicted by a jury of one count of assault; one count of operating a vehicle while under the influence of alcohol; one count of operating a vehicle with a prohibited concentration of alcohol in his system; and one count of no operator's license. He now appeals alleging four assignments of error. For the sake of judicial economy, the first and second assignments of error will be consolidated.
 First and Second Assignments of Error The record contains insufficient evidence to supportDefendant-Appellant's conviction for assault.
 Defendant-Appellant's conviction for assault is contrary to themanifest weight of the evidence.
 ¶ 11 Ohio Revised Code 2903.13(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to another . . ." A person acts knowingly when "regardless of his purpose . . . he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Furthermore, "`physical harm to persons' means any injury, illness, or other psychological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).
¶ 12 In State v. Jenks, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. In contrast, when reviewing whether a verdict is against the manifest weight of the evidence, this Court must review the entire record, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.
¶ 13 In the instant case, Veith argues that because he did notknowingly cause physical harm to Lt. Bayles during the altercation, then in order for him to be guilty of assault the State must prove that Veithknowingly attempted to cause physical harm to Lt. Bayles. Moreover, Veith suggests that he never intended to grab Lt. Bayles' gun and that he was merely trying to "get out of the situation."
¶ 14 Regardless of how the issue is framed, i.e. whether Veith did knowing cause or knowingly attempt to cause physical harm to Lt. Bayles, a rational trier of fact could have found either one by the evidence presented in this case. Primarily, Lt. Bayles testified that as he turned back towards Veith in the breathalyzer room, he felt Veith's shoulder go into his stomach. Moreover, Lt. Radcliff testified that when he entered the room, Veith had Lt. Bayles pinned up against the wall. Taking these two statements, coupled with the fact that Veith inquired about Lt. Bayles' gun shortly before the incident occurred and all officers involved testified seeing Veith's hand on Lt. Bayles' gun, we conclude that there was sufficient evidence to support Veith's assault conviction.
¶ 15 Using this same evidence, we conclude that it was not a miscarriage of justice, nor did the jury did clearly lose its way, in finding Veith guilty of assault. Simply because the jury chose to believe the officers involved in this case instead of Veith does not indicate that there was insufficient evidence involved or that a conviction is against the manifest weight of the evidence. Accordingly, the first and second assignments of error are overruled.
 Third Assignment of Error The record contains insufficient evidence to supportdefendant-appellant's conviction for driving while intoxicated.
 ¶ 16 In this assignment of error, Veith argues that because he put a coin in his mouth prior to taking the breathalyzer and, according to his testimony, the coin remained in his mouth until it was "knocked out" during the altercation, the results of the breathalyzer are inadmissible. Therefore, Veith suggests that there is insufficient evidence to convict him of driving while intoxicated based on having the proscribed blood alcohol level pursuant to R.C. 4511.19(A)(3).[3] We will review the evidence in this case in light of applicable case law andJenks, supra.
¶ 17 At the time of Veith's arrest, R.C. 4511.19(A)(3) stated, in relevant part, that "[n]o person shall operate any vehicle, streetcar, or trackless trolley within this state if . . . the person has a concentration of ten-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath." Moreover, when administering a breath test in accordance with Ohio Administrative Code § 3701-53-02, the law clearly requires that the defendant not ingest anything for twenty minutes prior to taking the breathalyzer test. See, e.g. State v. Willis
(1999), 131 Ohio App.3d 646, 650, 723 N.E.2d 198.
¶ 18 In the case sub judice, Lt. Bayles testified that he saw Veith's hand move toward Veith's mouth on two occasions. On the second occasion and before Lt. Bayles administered the breathalyzer, he examined Veith's mouth with a flashlight for a foreign object but did not find anything. Accordingly, Lt. Bayles testified that he waited twenty to twenty five minutes before administering Veith a breath test in which Veith had a BAC of .141. Lt. Bayles stated:
He goes to the bathroom. As he's walking in front of me, I see his handgo to his mouth again. His back is to me. I didn't see exactly what wasgoing on in his mouth, whether he was putting something [sic]. I saw hisarm go up like this and go back down very quickly. (Indicating) I saw himgo to the bathroom. * * * He came back, went to the Breathalyzer room[sic]. I asked Lieutenant Radcliff, which is in the lieutenant's office[sic], adjacent to the Breathalyzer room to bring me a flashlight. Hebrought me a flashlight. I searched his mouth with a flashlight. I stilldid not see anything, uh, and so I — I — I turned around to do theBreathalyzer again. And I heard a clicking sound like something clickingat his teeth.
 At this point I'm — I'm — I'm checking his mouth again. I see himswallow. I asked him if he swallowed something, a coin or something. Hesaid no. I told him I didn't really believe it. I was going to waittwenty minutes and test him again.
Trial Tr. at 52-53. Conversely, Veith argues that he did have a coin in his mouth during the administration of the breathalyzer. Moreover, Veith suggests that even though Lt. Bayles checked Veith's mouth for a foreign object, Lt. Bayles was uncertain whether anything was in Veith's mouth.
¶ 19 After reviewing the testimony regarding whether Veith had a foreign object in his mouth during the administration of the breathalyzer, we conclude that when viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the Veith did not have any foreign object in his mouth at least twenty minutes prior to taking the breath test. See Jenks, supra. Moreover, we conclude that Veith's .141 BAC was over the legal limit at the time of Veith's arrest. Accordingly, we rule that Veith's third assignment of error is without merit.
 Fourth Assignment of Error Defendant-Appellant received prejudicially ineffective assistance ofcounsel in violation of his sixth and fourteenth amendment rights, aswell as his rights under section 10, article I, Ohio constitution.
 ¶ 20 In this assignment of error, Veith argues that his trial counsel failed by not filing a timely motion to suppress the results of the breathalyzer test.
¶ 21 As this Court has previously stated, the State of Ohio has adopted the two-part test outlined by the United State's Supreme Court inStrickland v. Washington for determining whether a criminal defendant has been denied ineffective assistance of counsel. See, e.g. State v. Brown,
3d Dist. No. 8-02-09, 2002-Ohio-4755, at ¶ 50. In order to claim ineffectiveness, the defendant must first show "that counsel's representation fell below an objective standard of reasonableness."Strickland v. Washington (1984), 466 U.S. 668, 687-688, 104 S.Ct. 2052,80 L.Ed.2d 674. Second, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
¶ 22 First and foremost, we note that there is nothing in the record that indicates that Veith proffered any evidence that would assist this Court in determining that the breathalyzer results would have been suppressed. Without such evidence, there is no way for this Court to determine that "but for counsel's unprofessional errors," the result of the trial would have been different. Second, we recognize that Veith's trial counsel did file a motion to suppress Veith's statements that gave Lt. Bayles one indication that Veith was under the influence of alcohol when Lt. Bayles made the initial traffic stop. Nevertheless, the record indicates that Lt. Bayles could have had probable cause that Veith was under the influence of alcohol without any of Veith's statements. For example, the record indicates that Veith was traveling at an excessive rate of speed; Veith was driving left of center; and Veith had a strong odor of alcohol on his person, as well as blood shot eyes. Thus, we conclude that Veith's ineffective assistance of counsel claim is without merit. The fourth assignment of error is overruled.
Judgment affirmed.
 Bryant, J., concur.
[1] At the time Veith was given the breathalyzer, the legal limit for driving while intoxicated was .100.
[2] The record shows that Lt. Bayles' gun holster did not require a strap in order to keep it in place. Once the gun is locked in the holster, the officer must push down, forward, and up in order to release the weapon.
[3] A review of the appellate brief indicates that Veith is not challenging his conviction for driving under the influence pursuant to R.C. 4511.19(A)(1).